O'BOYLE v. McGIRR BROS., Inc., et al.

No. 10081.

District Court, E. D. New York.

Feb. 20, 1930.

638

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston, of New York City, of counsel), for libelant.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for McGirr Bros., Inc.

Schreiber, Collins, Myers & Buchter, of New York City (Thomas A. McDonald, of New York City, of counsel), for Empire Carting Co.

GALSTON, District Judge.

The libel alleges that McGirr Bros., Inc., the respondent, chartered from the libelant the barge Hazel T. Hinds on June 19, 1926; that on said day the respondent took possession and control of the barge, and remained in possession and control until June 30, 1926, when the boat was returned to the libelant in a damaged condition.

The Empire Carting Company, on the petition of the respondent, was impleaded, the petition alleging that, if the barge sustained any injuries, they were caused by the negligence of the vessel and her master, or by the Empire Carting Company, for failure to furnish the vessel with a proper discharging berth.

At the outset, it may be stated that the proofs failed utterly to connect the Empire Carting Company with any act of negligence or any imputation of negligence, and the libel as against the Empire Carting Company was accordingly dismissed at 'the close of the trial.

The facts as disclosed at the trial show that this barge was one without motive power; that an oral charter was arranged under the usual harbor terms between the libelant and the respondent; that the barge was delivered to the charterer in good condition on June 19, 1926, and was returned in a damaged condition on June 30th.

The manager of the O'Boyle Transportation Company testified that the condition of the barge prior to delivery to the charterer was good. He had made an examination on the day of delivery. Though he did not go down into the hold, he looked down the hold from the deck; there was no twist in the boat at the time of the examination; she was lying level in the water; she was not leaking; the caulking was in order.

An examination made by the surveyor at dry dock showed that there was a twist in the boat; there were deck beams broken, and the boat was not capable of carrying cargo. When the boat was being loaded at Communipaw by the respondent, the boat, as admitted by Hensley, in charge of the loading for the respondent, looked all right to him. Even McGirr, whose testimony, for reasons which I shall presently state, must otherwise be wholly disregarded, admitted on cross-examination that, when he examined the boat in dry dock, there was evidence of a fresh break of the three bottom planks near the stern of the boat.

In the circumstances, the law being well settled that a charter of a barge without motive power and with a captain furnished by the owner constitutes a demise which makes the charterer the owner pro hac vice, and that the charterer is liable for any damages sustained by the boat while under charter, resulting from his negligence, and since the owner established seaworthiness, the burden is on the charterer at least to account for the damaged condition of the barge which he returns. White v. Schoonmaker-Connors (C. C. A.) 265 F. 465.

The respondent herein has failed to show how the damage occurred, and failed, moreover, to show what it did with the vessel during the charter period, and consequently has not met the presumption of negligence.

O'Brien Bros. v. City of New York (C. C. A.) 9 F.(2d) 542.

Accordingly, the libelant may have a decree against the respondent McGirr Bros. Inc.

There is another serious feature which arose at the trial to which attention must be given. The respondent offered its Exhibit No. 1 presumably for the purpose of proving payment of all claims and demands of the libelant up to August 20, 1926. The witness Eugene F. McGirr testified that the indorsement bearing the legend "In full payment for all claims and demands to date, 8/20/26, in connection with all our dealings," was in the handwriting of his bookkeeper, and that that indorsement was on the check before the stamp of the Nassau National Bank was affixed thereto. That witness said:

"A. Yes, sir, it was on there. I made her put that on there before I signed the check, so it would be sure to be there. I didn't even trust her to put it on after I signed it."

"Q. So that you saw it with your own eyes? A. I saw it, I had it put on that particular part of the check because on the other end of the check there were a couple of perforations and it could be torn off, and on this end it could not be torn off."

"Q. And when you sent it to O'Boyle it was on there? A. Yes, sir, I sent it over to them by messenger so as to be sure they would get it."

An examination of libelant's Exhibits No. 1 and No. 2, enlarged photographs of the check, to my mind proves beyond any question that McGirr testified falsely.

The record in the case will be certified to the United States attorney.

Meanwhile counsel are to leave the exhibits with the clerk of the court.