## THE FRANK A. SMITH.

### NORRIS GRAIN CO. v. RYAN et al.

#### No. A–13135.

District Court, E. D. New York.
June 13, 1934.

Carter, Ledyard & Milburn, of New York City (Rush Taggart and R. K. Hines, Jr., both of New York City, of counsel), for libelant.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for respondent.

Single, Atkins & Tyler, of New York City (Christopher E. Heckman, of New York City, of counsel), for claimant.

BYERS, District Judge.

The libelant sues to recover for damages sustained by its cargo of wheat while laden

on the barge or harbor box Frank A. Smith. The loading was done at the grain elevator of the New York Barge Canal terminal at Columbia Street, in this district, on October 14, 1931.

The cargo, consisting of 33,500 bushels, remained on the barge until November 24, 1931, a period of 41 days, and at discharge some 2,900 bushels were found to be wet, and 500 additional bushels had become heated by contact therewith.

The damaged portion of the cargo was on the port side amidships.

When the cargo had been discharged, the barge was taken to a repair yard, and inspection disclosed that a piece of hard pine driftwood, 2 to 3 inches wide, had become wedged in the seam of the seventh plank on the port side, about amidships on the outside of the hull, sufficiently (i. e., 2 or 3 inches) to open the seam and admit the water that did the damage.

This opening was about 6 feet above the light water line, and about 4 feet below the loaded water line, and therefore probably was not made when the vessel was completely laden, on the assumption that the driftwood was afloat when it became imbedded.

The barge was shifted from her position at the elevator, to another place in the slip, and there remained until discharged. In other words, the vessel was used as a floating warehouse, and was subject to such handling as the libelant might direct. If delivery of the grain so required, the barge would have been towed to the place thereof, and this would have been at the cost of the libelant.

It is idle to speculate upon the exact happening that caused the seam to open, for there is no evidence on the subject. If the barge did not roll at all during the period of lying in the slip, as an incident of which the driftwood was driven into her hull by another vessel in close contact, then the damage must have been done while the loading was going forward.

In any event, the barge was seaworthy when she was delivered at the elevator. The evidence is clear and undisputed, on this point.

The libelant urges that the contract between the parties was that of private carriage, and that the claimant owner, or his agent Ryan, the respondent, failed to meet the requirements of that relation.

The hiring of course was oral, and in accord with long standing custom between the Norris company and Ryan, who is engaged in harbor lighterage and transportation. He was asked by telephone for a light barge, and procured the Frank A. Smith from her owner Derby, and the agreed price as between Norris and Ryan was $12.00 per day, which Ryan remitted to Derby, less 5% retained as commission.

A bargee accompanied the vessel.

If towage was needed, Ryan provided his own tug, and charged separately for the service.

The decision as to this was of course with Norris, and that would amount to an exercise of dominion, i. e., an incident of the usual demise.

There was no contract of carriage in the sense that the vessel was hired to make a voyage from a certain place to a given destination.

The libelant relies on The Jungshoved (C. C. A.) 290 F. 733, 735, in which the following occurs: "The kind of carriage here contemplated was very humble; it consisted in lying still and acting as a warehouse; still it was carriage, in the sense of sustaining on the water, and that is enough."

But these words had to do with a lighter, hired for temporary storage, which sank at the pier when loaded; " 'she just faded away' without explanation, then or since. This raises a presumption of unseaworthiness", citing cases.

There is no such circumstance here, and seaworthiness has been found, as stated.

█ The quoted language is not thought to mean that, in any case in which floating storage is contracted for, the relation between the cargo owner and the vessel owner or agent is necessarily that of private carriage.

█ It is then urged that because the barge Captain, having received from the elevator a certificate of delivery on board of a certain number of bushels of wheat, and having endorsed thereon the following which he delivered to Norris Grain Company:

"October 15th, 1931.
"This is to certify that the within mentioned 28,475 bu. Wheat has been loaded into the Harbor Boxes F. Smith 12,400 bus. and F. J. Gormley 16,075 bus. and is now lying at the N. Y. State Elevator, Brooklyn, N. Y., and will only be delivered upon surrender of this certificate.
"Joseph A. Ryan
"per H. A. Burhenne"

it follows that there was something indicative of private carriage imported into the situation, whereby a demise was necessarily excluded.

136

This is not thought to be so. The document was for Norris, and probably would be presented by a purchaser of the wheat to the bargee, as evidence of the right to direct disposition of the cargo. It was merely a matter of private convenience between the libelant, and Ryan or the bargee.

A contract of private carriage was not thereby demonstrated. The Norris company urges that this endorsement on the certificate shows that Ryan retained possession of the barge. But it does not say so. It merely contains a memorandum of the fact that the grain has been received on board a barge, and that delivery of the receipt will be regarded as symbolic delivery of the cargo.

The cases relied upon have been examined, and are thought not to throw light upon the facts here involved. Sacramento Nav. Co. v. Salz, 273 U. S. 326, 47 S. Ct. 368, 71 L. Ed. 663; Hansen v. E. I. Du Pont de Nemours & Co. (C. C. A.) 33 F.(2d) 94; The Fred E. Hasler (C. C. A.) 55 F.(2d) 919.

The evidence demonstrates to the satisfaction of this Court that the oral charter was of the usual harbor type and constituted a demise; that the duty of going forward with evidence to explain the cause of the damage to the barge rested upon the Norris company. Schoonmaker Conners Co., Inc. v. Lambert Transp. Co. (C. C. A.) 268 F. 102, at page 104.

This duty the libelant has not undertaken, and it has therefore failed in its proof.

If the Court has mistaken the legal relation of the parties, and the respondent and/or claimant should be held to the obligations of private carriage, the result will be the same.

As has recently been reaffirmed in the Second Circuit Court of Appeals, in The Joseph J. Hock (General Chemical Co. v. The Barge Hock, etc.) 70 F.(2d) 259, the liability of a private carrier is that of a bailee.

Here the failure to deliver the cargo at outturn has been shown, and the bailee has come forward and explained the cause of the damage, namely, the leak resulting from the opening of the seam as stated; a showing has been made of freedom from negligence, and a barge that was seaworthy when taken to the loading elevator. The libelant has failed to resume its affirmative proof to establish negligence by the bailee. See In re Steamship Company Norden (D. C.) 6 F.(2d) 883, at page 886, and cases cited on the latter page. See, also, The C. R. Sheffer (C. C. A.) 249 F. 600.

It has not been shown that the private carrier was deficient in the exercise of the reasonable skill of the calling.

Libel dismissed with one bill of costs to be shared equally by the respondent and the claimant.

Settle decree on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.