## THE INDEPENDENT.

## NEW ORLEANS COAL & BISSO TOW-BOAT CO. v. TEXAS CO.

### No. 9876.

Circuit Court of Appeals, Fifth Circuit.

Aug. 12, 1941.

Esmond Phelps and W. B. Spencer, Jr., both of New Orleans, La., for appellants.

M. A. Grace, Edwin H. Grace, and Daniel H. Grace, all of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from an interlocutory decree in admiralty in favor of libellant. A libel in rem was filed by the Texas Co., hereafter called Texas, against the steam tug, Independent, to hold her responsible for damages amounting to $2,299.61, caused by the loss of cargoes of oil loaded on two barges. The Independent and the barges were owned by the New Orleans Coal & Bisso Towboat Co., hereafter referred to as the Towboat Co. The libel alleged that on January 4, 1932, libellant was the owner

of 5,110.26 barrels of fuel oil, which it was holding for delivery to the Lone Star Cement Company's plant, located on the Industrial Canal at New Orleans; that libellant entered into an agreement with the Towboat Co. to furnish a tug and two barges to "transport or tow" this cargo of oil to its aforesaid destination; that both the tug and the barges were unseaworthy; that this and the negligence of those in charge of the Independent caused the loss of the oil. It does not allege any specific negligence of the tug.

The sworn answer denied negligence and averred that prior to January, 1932, the Towboat Co., as a private individual, entered into a verbal agreement with libellant to lease to Texas one of its barges at the rate of $500 a month, said barge to have a capacity of not less than 5,000 barrels. It further averred that it agreed to furnish a tug to tow the barge at the rate of $50 to the Industrial Canal and back to the Marrero wharf of libellant and to charge $6 an hour for pumping time in unloading the barge.

█ There is some slight conflict in the evidence as to the loading of the barges and the happening of the accident. This is not surprising as the case dragged for over nine years before final decision, testimony being taken from time to time at long intervals, the first three and a half years after the accident. Since all the evidence was taken out of court we are in as good a position to pass upon the veracity of the witnesses and the probative force of the evidence as was the District Court.

We find the material facts as follows: When called for, the large barge originally contemplated by the agreement was not available and two barges, No. 12 with a capacity of about 2,000 barrels, and No. 18 with a capacity of about 3,500 barrels, were delivered to Texas on January 4, 1932, and accepted. They were steel barges of the scow type without motive power. On the barges was a colored man, Downin, an employee of the Towboat Co., whose duty it was to act as watchman and pumpman, to operate the pumps in unloading the barges. He had no other authority. The barges were loaded by employees of Texas with thick fuel oil, heavier than water. The next morning the tug Independent went to the Marrero plant of Texas to take out the tow. She was of sufficient capacity to tow a 3,000 to 7,000 ton ship, and could easily have handled the two loaded barges

in one tow. The barges were then apparently riding on an even keel and not too heavily loaded. The river was high or rising, with considerable current, and there was a strong wind blowing against the current, which made the river rough and choppy. The force of the current and the wind was not definitely shown. When the Independent proceeded to make up the tow and the mooring lines were cast off the barges listed, turned over and sank, the cargoes becoming a total loss. There is nothing but conjecture to show what caused them to sink. Later the barges were raised and put back in service, before the libel was filed. The Towboat Co. gave no receipt for the cargoes and issued no bill of lading. In the usual course of business Texas got a receipt direct from the Cement Company after the oil was delivered to it. There was no evidence to show that under the conditions of wind and water prevailing taking out the barges to make up the tow was dangerous or negligent.

The undisputed testimony of W. A. Bisso, president of the Towboat Co., and Schneider, foreman at the Marrero plant of Texas, establishes the contract as pleaded in the answer. A letter written by W. A. Bisso clearly shows the parties intended to execute a written time charter for the barge.

There was evidence tending to show the barges were seaworthy when delivered but we pass that as unimportant since the libel is only against the tug and not against the barges.

The District Court found that the barges were unseaworthy for the transportation of fuel oil of the gravity of the cargo, under the attendant conditions of current, wind and choppy water surface such as prevailed on the morning of the disaster, but which were not unusual and might have been reasonably anticipated by W. A. Bisso, president of the Towing Co. The District Court concluded that the contract between the parties was one of affreightment and not towage; and that the burden was on the Towing Co. to show that the tug and the barges were seaworthy. He made no finding as to the fault of the tug but entered an interlocutory decree fixing her liability.

The District Court relied upon Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663. We do not consider that case in point. There the

navigation company, a common carrier, received a quantity of barley in sacks and issued a bill of lading for its transportation on board its barge Tennessee, which was without motive power. While the barge was being towed by the San Joaquin No. 4, also owned by the Transportation Company, it was sunk in a collision solely by the fault of the tug. The barley became a total loss. The libel was filed in personam. The Navigation Co. claimed exoneration under Sec. 3 of the Harter Act, 46 U.S.C.A. § 192. The decision was that there was a single contract of affreightment and use of the tug must be read into that contract as an indispensable factor in the performance of its obligations. The defense under the Harter Act was sustained.

■ In this case the facts are substantially different. Here no receipt or bill of lading was issued by the Towboat Co. Texas retained custody and control of the oil until it was delivered to the Cement Company. It is evident that the agreement contemplated a charter of a barge to Texas for a definite time at a fixed rate of hire. Texas was at liberty to use the barge as it pleased and to hire any tug it pleased to move it wherever it pleased. We think the contract was one of charter of the barge and a separate contract for towing whenever called upon to do so. A contract of affreightment is not shown.

■ On the facts shown the barges were chartered to Texas and this amounted to a demise notwithstanding Downin, an employee of the Towage Company, was on them as watchman and pumpman. Ira S. Bushey & Sons, Inc., v. Hedger & Co., Inc., 2 Cir., 40 F.2d 417, and authorities cited therein. As to the Independent the contract was merely one of towage. An action in rem against a tug to recover for damage sustained by the tow or its cargo is ex delicto and not ex contractu. Conceding that the burden was on the towing company to show the tug was seaworthy, we think the burden has been sustained. The burden was on libellant to prove the negligence of the tug as the offending vessel. The tug and the barges were not one vessel in law so that negligence of one could be attributed to the other. The Eugene F. Moran v. New York C. & H. R. R. Co., 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600; Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130; Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699.

■ In an action in rem the Independent could not be held liable unless her negligence was proven. There is no evidence in the record tending to show the tug was guilty of any negligence that caused or contributed to the sinking of the barges and the loss of their cargoes.

The judgment appealed from is reversed and the cause is remanded with instructions to dismiss the libel. All costs to be taxed against libellant, appellee herein.