**STOCKTON SAND & CRUSHED ROCK CO., Inc., v. BUNDENSEN et al.**

No. 10687.

Circuit Court of Appeals, Ninth Circuit.

March 19, 1945.

Darrah & Ellis, Guard C. Darrah, and Agler B. Ellis, all of Stockton, Cal., and Single, Bryant, Cook and Herrington, of San Francisco, Cal., for appellant.

S. H. Derby, Joseph C. Sharp, James A. Quinby, and Lloyd M. Tweedt, all of San Francisco, Cal. (Derby, Sharp, Quinby & Tweedt, of San Francisco, Cal., of counsel), for appellees.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree in admiralty holding appellee partners free

160

from liability for damages by fire to appellant's derrick barge while engaged in dredging a channel for an outfall sewer on Napa River near Vallejo, California. The barge also was placing and driving a protective barrier of pilings at the channel's edges to prevent the slipping back into the channel of the removed material.

■ The district court found as to the agreement between the parties that appellant agreed to furnish to appellees the services of the derrick barge Foy No. 2 in connection with the construction of an outfall sewer by said appellees for the United States Navy near Vallejo, California. Appellant agreed to furnish the services of the barge until the completion of the construction work provided appellees found that the barge was suitable and capable of performing the contemplated services. Appellant agreed to furnish the services of said barge as aforesaid for the charge of $10 per hour of actual use with a minimum charge for four hours on any day the barge was steamed up. Appellant agreed to furnish and to include in the hourly charge of $10 an operator, a fireman, water, fuel, oil and full insurance for the barge. Appellant stated that the barge was fully insured and agreed to keep the barge fully insured. Appellees agreed to pay said hourly charge for the services of said barge for each hour of actual use with the minimum charge as aforesaid. Appellees also agreed to pay the wages of the operator and fireman for any time, after said minimum of four hours, short of eight hours per day, as the operator and fireman had to be paid for a minimum of eight hours on any day they worked. Appellees also agreed to pay appellant for towing the barge to and from the place of appellees' construction work. On May 15, 1941, appellant towed the barge from Oakland, California, to the place of appellees' construction work on the Napa River.

It is obvious that under such an agreement there was no demise of the barge to appellees up to and at the time of her arrival in the place she was to perform the agreed work for the appellees nor thereafter.

The evidence amply supports this finding of the agreement. The contract was for the use and service of the vessel, not for the possession of the vessel herself to be used under the management of the appellees. United States v. Shea, 152 U.S. 178,

189, 190, 14 S.Ct. 519, 38 L.Ed. 403. Here was no agreement to give to the appellees the complete control and operation of the barge as in The Independent, 5 Cir., 122 F.2d 141, 143. Nor was the barge delivered to another person for towage by him, in which the latter is liable for damage caused by negligent towage as in Ira S. Bushey & Sons v. W. E. Hedger & Co., 2 Cir., 40 F.2d 417, 418, and cases there cited. Nor was the control of the operation of the barge and her machinery agreed to be given to appellees as in O'Boyle v. McGirr Bros., D.C., 39 F.2d 637, 638. If, as claimed by appellant, there became a demise of the barge it was by a modification of the original agreement.

The fire which subsequently occurred was caused by an explosion in the firebox of the barge's boiler, causing burning oil to be thrown on the barge's deck. The district court found that the fire was caused by a defect in the barge's equipment and did not arise from any fault of the fireman in charge.

Appellant's contention here is that the evidence shows the equipment was sufficient; that it had ceased to operate the barge and had demised her to appellees; that the explosion was caused by the neglect of the fireman and that he and the barge's operator were employed by the appellees and not by the appellant. The court found to the contrary that "Said barge was at all times herein mentioned in the possession of libelant [appellant] and the operation, maintenance and care of said barge was at all said times under the exclusive control and management of libelant."

■ Since all the testimony relative to the agreement of the parties as to the character of the fireman's employment was viva voce, it is sufficient to dispose of the appeal if there is substantial evidence in the record supporting this finding of the district court. The question is whether the fireman and operator were the employees of appellant for, assuming appellant's contention that the boiler and firebox equipment constituted prior equipment, the appellees are not liable if the allegedly negligent fireman was appellant's employee.

Before the barge's arrival the appellant stated to appellees that it had no fireman or operator for the barge and asked the appellees to procure them. The evidence

is conflicting as to whether the fireman and the operator when engaged were to be employed by appellant or appellees. However, the district court heard and evidently believed the following testimony of appellee Lauritzen respecting their employment:

"Q. Please state the circumstances under which they went to work on the Foy barge? A. Well, on the—when the derrick barge arrived over there—well, the day before, I had sent Mr. Kitchen down to Oakland to see that the barge was under way, and then he told me at that time that they would not be—that he had been informed by the Foys they would not be able to furnish an operator with the derrick barge, and on the following night, she arrived over there, he called me and informed me *they* would not be able to furnish a fireman and that we would have to get *them* a fireman and operator, and we had this fireman and operator working for me as second shift on my own derrick barge, and I told these men to go over there and *work for Mr. Foy* on the derrick barge." (Emphasis supplied.)

Ed Foy was an officer of appellant. Ralph Foy was appellant's superintendent, who theretofore had directed the operation of appellant's barge here in question. There was further evidence that the fireman was an experienced operator of a similar barge.

Appellee Lauritzen in charge of the sewer contract testified that he gave no orders to the fireman. The fireman testified he received all his directions and instructions from Ralph Foy, appellant's superintendent. Kitchen, appellees' superintendent, testified that Ralph Foy agreed "to stay there [on the barge] and instruct the men [the fireman and operator] so that they were capable of carrying out the duties of the barge there to his [Foy's] satisfaction." Ralph Foy testified that he and Veatch, the former fireman of the barge, came to the barge and instructed the new fireman how to operate the firebox and boiler.

Appellant requested appellees to pay the wages of the fireman and operator and appellees did so. However, the agreement was that the amount so paid was to be charged back by appellees. Appellant, after the fire, requested a statement of the amount so paid so it could be deducted from the amount due appellant for the services of the barge. The contention that the fireman was not employed by the appellant came afterward.

From this evidence the district court well could infer that appellees were merely appellant's agents in procuring for appellant the employment of the fireman and operator as appellant's employees. Since up to that time the barge, towed to the place of work by appellant, was not a demise of the vessel to appellees, such securing of these two men for appellant did not change the status of the barge as owned and operated by appellant at the time of the fire. If there were negligence by the fireman, it was not the negligence of appellees. The decree is

Affirmed.