Argued February 21, affirmed March 14, 1951

# MARSTALLER *v.* ALBINA DOCK COMPANY ET AL.

### 229 P. 2d 269

*James Arthur Powers,* of Portland, argued the cause for appellant. On the briefs were Veazie, Powers & Veazie and Norman N. Griffith, of Portland.

*Paul R. Harris,* of Portland, argued the cause for respondent and cross-appellant. With him on the briefs was C. J. Stocklen, of Portland.

*Robert T. Mautz,* of Portland, argued the cause for respondent to cross-appellant. On the brief were Wilbur, Beckett, Oppenheimer, Mautz & Souther, of Portland.

TOOZE, J.

This is an action to recover damages for personal injuries brought by Otto A. Marstaller, as plaintiff, against Albina Dock Company, a corporation, hereafter referred to as "Albina," and Willamette Tug and Barge Company, a corporation, hereafter referred to as "Willamette," as defendants. Judgment was entered in favor of plaintiff against Albina in the sum of $9,500, and in favor of Willamette against plaintiff. Albina appeals, and plaintiff cross-appeals.

Plaintiff is a longshoreman. The accident occurred about 7:30 p. m. on October 23, 1947, while plaintiff was employed by Portland Stevedoring Company as a member of a longshore gang engaged in unloading lumber from a barge onto the "Coastal Adventurer," an ocean-going ship. This ship was tied up at Albina's dock on the Willamette River, a navigable stream, in the Port of Portland, and was headed upstream. The barge was lashed to the ship on its offshore side.

This barge, No. 464, owned by Willamette, was delivered by Willamette to Albina at Albina's dock on October 21, 1947, pursuant to a telephoned order placed by Charles A. Hodges, manager for Albina. The order had been given to Walter H. Korell, Willamette's dispatcher. Hodges testified:

> "I ordered the barge from Willamette Tug and Barge Company to load some lumber from the cars to the barge to place alongside the vessel. * * * I ordered it for a specific time and they delivered the barge. * * * Just advised as to the quantity of lumber I had to place, to put on the barge and they provided a suitable barge."

The barge was a flat-top vessel without motive power or railings. It was equipped with three hatches, both fore and aft. These hatches were each approxi-

mately 5 feet long and 2½ feet wide. They were not cargo hatches, but were designed to facilitate making repairs, for ventilation, and also for pumping out water.

On October 22, 1947, Albina loaded the barge with lumber, the loading being done by longshoremen employed by Albina. Albina then requested Willamette to supply a tugboat for the purpose of towing the loaded barge from Albina's dock to the offshore side of the ship, a distance of about 100 feet. On October 23, pursuant to this order from Albina, Willamette furnished its tugboat "Stone" and towed the barge from the dock to shipside, where it was lashed to the ship. This towing was done at 8:00 a. m.

The responsibility for unloading the barge and loading the lumber onto the ship was that of the shipowner, and Portland Stevedoring Company was employed for the purpose. Unloading and loading operations commenced the morning of October 23. When it was necessary to move the barge alongside the ship, this was accomplished by slackening the line by which the barge was lashed to the ship and permitting the current in the river to move the same. This operation was carried out by the longshoremen and ship's crew.

Plaintiff reported for work at 7:00 p. m. that evening and, with another, was working on the deck of the barge. It was dark, though a cluster of lights had been placed by the Stevedoring Company, which was designed to throw light upon the operations. It became necessary to move the barge, and plaintiff went forward to slacken the line. Having done that, he was in the act of returning to his place of work when he stepped into an open hatch, was thereby forcibly thrown to the deck and against the lumber thereon, and suf-

fered the personal injuries for which he brought this action to recover damages.

Plaintiff charged that the accident was solely caused by the negligence of both defendants in maintaining said barge in an unseaworthy condition while he was working on the same and in failing to warn him of said unseaworthy condition. He alleged that the barge was entirely unprovided with hatch covers.

In its answer, Albina denied liability to plaintiff under any circumstances and particularly on the theory that it was not responsible for any alleged unseaworthy condition of the barge at the time of the accident, because the rental agreement between it and Willamette was a contract of affreightment only.

Willamette denied liability to plaintiff under any circumstances and particularly on the theory that it was not responsible for any alleged unseaworthy condition of the barge at the time of the accident, because the barge had been rented and demised to Albina, who then had exclusive custody, possession, and control of the same.

Both defendants charged that the accident was due solely to plaintiff's own negligence in certain respects as alleged.

The case came on for trial before the court and jury. At the conclusion of the testimony all parties moved the court for a directed verdict; whereupon, and pursuant to the practice in such cases, the trial court dismissed the jury and took the case under advisement, both as to the law and the facts.

Thereafter, the able and experienced trial judge made and entered findings of fact and conclusions of law and entered judgment as above mentioned.

■ This being a law action, the findings of fact have

all the force and effect of a verdict of a jury, and this court is bound thereby if there is any substantial evidence in the record to support the same.

Amongst other things, the trial court found:

"That on or about the 23rd day of October, 1947, the defendant Willamette Tug and Barge Company, a corporation, had title to a barge known as Barge No. 464, but that said barge previous to said date had been rented, leased, and demised by said Willamette Tug and Barge Company to the defendant Albina Dock Company, a corporation, and on said date, to-wit: October 23rd, 1947, and at the time that plaintiff was injured * * * said barge was in the sole and exclusive custody, possession and control of said Albina Dock Company under and by virtue of said rental, lease and demise.

"* * * *

"That under and by virtue of said rental, lease and demise, said Barge #464, at all times mentioned herein, and in particular at the time plaintiff received the injuries hereinafter set forth, was owned, operated, controlled and managed by the defendant Albina Dock Company, a corporation, as owner pro hac vice for transporting large cargoes on navigable waters.

"* * * *

"That said accident was caused, without any contributing fault or negligence on the part of the plaintiff, by the defective, unsafe and unseaworthy condition of said barge and by the fault and negligence of the defendant corporation Albina Dock Company, which owned, operated, maintained and controlled said barge in the following particulars:

"1. That said hatchway located on the deck of said barge was maintained in an open, dangerous and unguarded condition by the defendant Albina Dock Company; and the defendant Albina Dock Company was further negligent and careless and said barge was in an unseaworthy condition in that

said barge was entirely unprovided with hatch covers for the purpose of covering said hatchway.

"2. That because of the unseaworthiness of said barge, said hatch instead of being covered in the usual and customary manner, was entirely open and unguarded.

"3. That defendant Albina Dock Company was careless and negligent in that they failed to warn and advise plaintiff of the open and unguarded condition of said hatchway  *  *  *.

"4. That defendant Albina Dock Company carelessly and negligently failed to furnish, supply and use hatch covers for the purpose of covering said hatchway although defendant well knew that plaintiff would be required to work in, about and near said hatchway in the furtherance of his duties.''

█ We have given careful consideration to all the testimony and exhibits admitted on the trial and we find an abundance of satisfactory evidence to support each and every of the trial court's findings, and in particular, the finding that the contract between defendants was one of demise.

The only written document in evidence that throws any light upon the contract between Albina and Willamette is the invoice covering towing services performed by Willamette and the *rental* charges for the barge. This invoice dated October 24, 1947, shows a rental charge for 3 days (October 22 to 24, inclusive) at $12.50 per day. It also shows the following charges:

"*1947*

"Oct. 21 Towed Barge #464 from Willamette Tug & Barge Company to Albina Crane, tug Henry J xone (sic) 3 to 2, 400 Ton, 2:00 P. M. ------------------------------------ $15.00

"Oct. 23 Run light to pick up Barge #464 from Willamette Tug & Barge Company to

"1947
    Albina Dock, Tug Stone, zone 3 to 2, 7:30 A. M. ............................................. 15.00

"Oct. 23 Towed #464 from Albina Dock to SS Coastal Adventurer, tug Stone, zone 2 to 2, 400 Ton, 8:00 A. M. ................... 15.00

"    24 Run light to pick up Barge #464 from Willamette Tug & Barge Company to Albina Dock, tug Stone, zone 3 to 2, 12:00 P. M. ............................................ 15.00

"    24 Towed #464 from Albina Dock to Willamette Tug & Barge Company, tug Stone, zone 2 to 3, 400 Ton, 1:00 P. M. .................................................. 15.00"

A transportation tax of 3% is charged on total towing charges. Albina paid these charges on November 10, 1947.

There is a dispute between defendants whether Albina was required under its agreement with Willamette to have Willamette do all necessary towing, Albina claiming that it was, while Willamette claimed that Albina could employ any other to perform that service. But we deem that wholly immaterial to the issues in this case. Even if it were agreed that Willamette was to do the towing whenever called upon by Albina to do so, that would be a separate contract from the demise of the barge. Obviously, when Albina ordered the barge, it had to be towed to its dock, and when Albina completed its use of the same, it had to be towed back to Willamette's place of business, some four miles away. *The only towing of the loaded barge was done from Albina's dock to shipside.* The fact that upon Albina's request this towing was done by Willamette, instead of by someone else, does not alter the fact that the barge itself was under demise to Albina.

■ The distinction between a demise, on the one hand, and a contract of affreightment, on the other, is well pointed out in *Banks v. Chas. Kurz Co. et al.,* 69 F. Supp. 61, 65. The court said:

"The practical difference is readily apparent: In the one instance, the shipowner turns over his vessel—lets it out—to the charterer; in the other, he agrees, in essence, to transport goods. The legal effect of a demise is to put the parties, as between themselves, in the position of bailor and bailee of the vessel; the legal effect of a contract of affreightment obviously is to put the parties in the position of shipper and carrier of goods. In the final legal analysis, it is well-settled, whether the charter constitutes a demise depends upon whether the management and control of the vessel are in the hands of the charterer."

Though perhaps wholly unnecessary for us to elucidate the obvious, nevertheless, under the facts in this case it is clearly apparent that transportation was a mere incident to the real transaction between defendants.

Had the contract between defendants been one of affreightment instead of demise, the charges made by Willamette would necessarily have been based upon a commodity rate of so much per thousand feet of lumber transported, instead of upon a rental basis as was the case here. Also, after 48 hours, there would have been a demurrage charge. These rates are fixed by rules and regulations of the Interstate Commerce Commission and must be followed.

The rules of law applicable to the situation confronting us are so well settled that we need not comment upon the altogether too many cases cited and commented upon in the briefs of the parties. To discuss those numerous authorities would serve no useful

purpose and would be but imposing an additional and wholly unnecessary burden upon the court.

■ In the instant case we have an oral charter of this barge. It is generally held that oral charters of barges in local harbors constitute demises. This is particularly true of a barge without motive power. And this rule prevails even though the owner's employes accompany the barge and handle its navigation and movement. As was said in *The Doyle,* 105 F. 2d 113: "Charters of barges without motive power, accompanied by a bargee paid by the owner, are demises. The so-called charterer becomes owner pro hac vice." See also *Banks v. Chas. Kurz Co. et al.,* supra; *The Independent,* 122 F. 2d 141; *White v. Schoonmaker-Connors Co., Inc.,* 265 F. 465; *The Nat E. Sutton,* 42 F. 2d 299, 62 F. 2d 787; *The Carlotta,* 48 F. 2d 110; *The Frank A. Smith,* 8 F. Supp. 134; *McGeeney v. Moran Towing Corporation et al.,* 149 F. 2d 791.

This principle was also recognized by this court in *Willamette Tug & Barge Co. v. Commercial Dispatching Corp.,* 180 Or. 657, 178 P. 2d 698.

Being the owner pro hac vice of this barge when this accident occurred, Albina was responsible for its unseaworthy condition at that time, if in fact it was unseaworthy.

■■ Seaworthiness of a vessel—and a barge is a vessel—contemplates not only its fitness for the safe transportation of cargo, but also its being equipped with safe and proper appliances in good order and condition. In *The State of Maryland,* 85 F. 2d 944; *The Osceloa,* 189 U. S. 158, 47 L. Ed. 760; *The Arizona v. Anelich,* 298 U. S. 110, 80 L. Ed. 1075; *Mahnich v. Southern S. S. Co.,* 321 U. S. 96, 88 L. Ed. 561; *Seas*

*Shipping Company v. Sieracki,* 328 U. S. 85, 90 L. Ed. 1099; *Norton v. Warner Co.,* 321 U. S. 565, 88 L. Ed. 931; *Adams v. Bortz,* 279 F. 521.

■ Though Albina did not keep anyone on the barge while it was being unloaded, and though the unloading was done by longshoremen not in its employ, nevertheless, the barge itself was still legally in its custody, possession, and control as the owner pro hac vice, and it remained so continuously until it was completely unloaded and had been turned back to Willamette. Willamette never had any dealings with the shipowner, nor with the Portland Stevedoring Company, in connection with the use of this barge. Its dealings were solely with Albina.

■ The question of seaworthiness of a vessel is usually one of fact. The charge that this barge was unseaworthy rests upon the proposition that no hatch covers were provided to cover the open hatchways. The evidence shows without contradiction that there was but one makeshift hatch cover on the barge, though there were six hatchway openings. Assuming that this one cover was in place on one of the hatches, that left five dangerous openings on the deck of the barge, into one of which plaintiff fell.

Obviously, hatch covers for these hatches were necessary and proper equipment to render the deck of this vessel safe for those who were required to perform their services thereon. It is beside the issue to argue that covers are often removed from hatches for the purposes of loading cargo, ventilation, and repairs, and by reason thereof, the vessel is not necessarily rendered unseaworthy. Manifestly, that is a far cry from a condition where no hatch covers whatever are provided for use during the times when to leave

a hatch open would create a dangerous situation. In the light of day open places on the deck of a vessel might not be particularly hazardous, but at night they would be extremely dangerous. At least a jury might so find.

Under the law it was the absolute duty of Albina, as the owner pro hac vice of this barge, to see that these necessary hatch covers were provided and in use, and this duty could not be delegated to others. In *Seas Shipping Company v. Sieracki,* supra, the Supreme Court of the United States said:

> "Nor does it follow from the fact that the stevedore gains protections against his employer appropriate to the employment relation as such, that he loses or never acquires against the shipowner the protections, not peculiar to that relation, which the law imposes as incidental to the performance of that service. *Among these is the obligation of seaworthiness. It is peculiarly and exclusively the obligation of the owner. It is one he cannot delegate.* (Italics ours.)

The United States Supreme Court in this case also said that the owner's liability for unseaworthiness of a vessel is absolute and further stated:

> "*It is essentially a species of liability without fault.* * * * Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character." (Italics ours.)

On the trial of this case, it developed that the rental of this barge was but one of a number of similar transactions between Willamette and Albina, occurring over a period of time. To support its contention that the contract here was one of affreightment instead of demise, as well as to establish its nonliability even though a demise, Albina sought to prove a general

understanding between it and Willamette that the latter would be responsible for any needed repairs to the barge while it was in Albina's possession, and for its seaworthiness, and that it carried insurance covering such seaworthiness; not that it is important, but it was not claimed that anything was said about repairs, seaworthiness, or insurance when this particular barge was ordered by Albina. The trial court rejected this evidence.

The evidence offered was wholly irrelevant and immaterial to the issues involved in this case. If this were an action between defendants involving repairs or seaworthiness, evidence of such an understanding or course of dealing might be relevant, but not so here. Albina, as owner pro hac vice, could not shift its primary liability to plaintiff by any contract it may have had with Willamette. *Cannella v. Lykes Bros. S. S. Co.,* 174 F. 2d 794, 798. Neither could such an understanding or course of dealing have any effect in determining whether the contract here was one of affreightment or demise. A lease is no less a lease because the owner undertakes to make all needed repairs, or carries insurance covering the premises, or both.

On the trial an offer of proof was made by Willamette, in which Albina joined, as follows:

"MR. MAUTZ: Now then, I want to also make another offer on another matter that has come up in such a way that I assume it will have to be done by an offer; namely, that if the witness Riddell were permitted to testify and also the witness Korell, who was cut off in making such an answer, that they would testify that the presence on the barge of hatch covers in this type of craft and with the type of hatch involved with the combings and all that are involved it has nothing to do with the

seaworthiness of the vessel and the absence of such could not constitute unseaworthiness on the part of the barge. I feel that as expert witnesses they are qualified to testify on that subject.''

■ This offer was not rejected by the court, but on the other hand, the court took the matter under advisement. So far as the record discloses, the court never made a ruling thereon. For that reason, there is nothing before this court to consider in that connection. *Richer v. Burke,* 147 Or. 465, 476, 34 P. 2d 317; *Bagley Co. v. International Harvester Co.,* 99 Or. 519, 524, 195 P. 348.

■ However, we do not hesitate to say that the entire absence of hatch covers on this barge rendered the barge unseaworthy as a matter of law. They were necessary appliances. This was not a proper field for expert testimony.

■ Whether the absence of such hatch covers at the particular time of this accident proximately caused the injuries to plaintiff was a question of fact for the court to determine, and the court found in favor of plaintiff.

Not that it would have made any difference in the final result in this case, nevertheless, there was no evidence on the trial that the barge was not equipped with hatch covers when it was delivered by Willamette to Albina, nor that such hatch covers were not then in place. At the time of the accident, Willamette had no control over or management of the barge. The sole responsibility for its condition at that time, in so far as plaintiff is concerned, was Albina's. *Vitozi v. Balboa Shipping Co., Inc.,* 163 F. 2d 286, 289. Under the facts here, judgment in favor of Willamette was proper.

■ If under any agreement Albina may have had with Willamette the ultimate loss in this case should be

suffered by Willamette, such result can only be obtained in a separate action brought by Albina against Willamette. It cannot be determined here. *Cannella v. Lykes Bros. S. S. Co.,* supra.

Finding no error in the record, the judgment is affirmed.