**HERTZ**

v.

**CONSOLIDATED FISHERIES, Inc.**

**THE CRESCENT NO. 2.**

**No. 13496.**

United States Court of Appeals
Ninth Circuit.

June 8, 1954.

Rehearing Denied July 2, 1954.

Derby, Sharp, Quinby & Tweedt, James A. Quinby, Lloyd M. Tweedt, Stanley J. Cook, San Francisco, Cal., for appellant.

Walter F. Calcagno, Joseph L. Alioto, San Francisco, Cal., for appellee.

Before HEALY, ORR and FEE, Circuit Judges.

ORR, Circuit Judge.

On the morning of June 4, 1950, a calm, clear day, appellee's 55.8-foot fishing vessel Crescent collided with and sank appellant's 36-foot gas screw Diana Claire five miles northeast of the Farallone Islands off the coast of California. The Crescent suffered no appreciable damage. Prior to the collision the Diana Claire was proceeding southeasterly on automatic pilot at her maximum speed of approximately eight knots and was unencumbered. The Crescent was going in a westerly direction at two knots fishing with a dragnet astern weighing about 5,000 pounds plus the weight of the fish in the net. The vessels approached on crossing courses at an angle of forty to forty-five degrees with the Diana Claire on the Crescent's starboard side. Neither vessel changed course prior to the collision. The Diana Claire gave no warning signal, did not slacken speed, and remained on automatic pilot. It is contended she reversed her engines just before the impact. The Crescent blew a warning whistle at 200 feet, stopped at 100 feet and reversed engines when it appeared that the Diana Claire was not going to stay clear. At the moment of impact the Crescent was either dead in the water or going astern.[1] The stem of the Crescent struck the bow of the Diana Claire about six feet abaft the port side.

In an action for damages for loss of the Diana Claire the trial court, 105

1. When the engines of the Crescent were stopped the heavy weight she was towing brought her to a halt and tendered to pull her astern.

F.Supp. 948, exonerated the Crescent and found the collision to have been caused solely by the fault and negligence of the Diana Claire in failing to keep a proper lookout, failing to stop, reverse or change course in time to avoid collision, and operating at excessive speed under the existing circumstances. Appellant challenges these findings as being contrary to the weight of the evidence. He claims that there is no affirmative evidence that he left his boat unwatched and that the lower court relied entirely upon speculation. The record is to the contrary. In an admiralty case in which all the testimony is oral the findings of fact of the trial court are presumptively correct, and being supported by substantial evidence we accept them. Stockton Sand & Crushed Rock Co. v. Bundensen, 9 Cir., 1945, 148 F.2d 159; Tawada v. United States, 9 Cir., 1947, 162 F.2d 615.

█ The evidence relied upon by the trial court amply sustains the conclusion that the Diana Claire was running blind on automatic pilot and that appellant did not see the Crescent until after or immediately prior to the collision. Captain Nardi of the Crescent testified that he kept a continuous watch on the Diana Claire and saw no one in the pilot house or at the wheel. Not until after the collision did appellant and his wife make an appearance in the pilot house. Appellant admits he was below prior to the accident. He claims, however, that he left the wheel untended for only a few seconds immediately prior to the collision for the purpose of awakening his wife. The trial court considered appellant's testimony so evasive and his version of the accident so improbable that he felt compelled to reject it. Appellant testified that he sighted the Crescent when she was ¾ to ½ mile away and at that time perceived the possibility of a collision. Fearing for the safety of his wife who was asleep in the bunkroom below he tried to awaken her by thumping on the deck of the flying bridge. Failing to arouse her he left the wheel and slid down into the pilot house, aroused his wife, returned to the pilot house, became aware that a collision was imminent and reversed his engines just before the impact. We can lend no more credence to this testimony than did the trial court. Appellant is a seaman of long experience. That such an experienced seaman, upon sighting a trawler ¾ to ½ mile away, barely moving in the water, would be impelled to leave the pilot house to awaken his sleeping wife because of his apprehension of the danger of a collision in the face of the fact that his position was such that he could have easily avoided the other vessel by a slight turn of the wheel is so unreasonable that it cannot be accepted. Had appellant observed the Crescent, as claimed, and believed there was a chance of collision, good seamanship and ordinary common sense would have demanded that he take the Diana Claire off automatic pilot and maneuvered to avoid the collision. At 200 feet when the Crescent blew a warning whistle appellant, had he been at the wheel, could have easily averted the collision by the exercise of ordinary seamanship. The Diana Claire was highly maneuverable and at eight knots could be turned completely around within fifty feet of another object. That appellant maintained his maximum speed of eight knots, kept the vessel on automatic pilot, gave no warning signal, made no attempt to alter his course, was unable to estimate the distance or speed of the Crescent, and failed to satisfactorily explain his conduct from the time he allegedly sighted the Crescent until the impact, compels the conclusion that he was below deck with his wife and failed to see the Crescent. This conduct was a complete disregard of every elementary rule of navigation. To set the automatic pilot and go below while proceeding at eight knots outside the entrance to San Francisco Bay amounts to reckless seamanship and is negligence of the highest order.

But, urges appellant, even though he was at fault divided damages should be allowed him because the Crescent was also at fault in that she failed to maintain an adequate lookout, failed to keep clear of the Diana Claire, and failed to

display a basket or other efficient signal to indicate that she was fishing.

The trial court correctly found that the Crescent maintained a proper lookout and was prudently and lawfully navigated. Captain Nardi of the Crescent took notice of the Diana Claire when she was 200 yards away and sounded a warning whistle at 200 feet. At 100 feet he stopped and reversed engines, despite the fact that in so doing he ran the danger of entangling the Crescent's rudder and propeller in the nets and cables and damaging the nets. Being heavily encumbered by her trawl, the Crescent could turn neither left nor right. She could only stop and this she did when it became apparent that the unencumbered Diana Claire was not going to stay clear. Under the circumstances Captain Nardi kept a vigilant and adequate lookout and did all that was required of a prudent and experienced seaman.

Appellant bases his case of negligence against the Crescent primarily on the theory that the two vessels met on crossing courses and that under Article 19 of the International Rules [2] the Crescent was the burdened vessel and was bound to keep out of the way of the Diana Claire. We are convinced that where, as here, one of the vessels is engaged in trawling and unable to maneuver effectively and the other vessel is unencumbered, Article 19 has no application. The Virginia and Joan, 1 cir., 1936, 86 F.2d 259; see The Albatross, 9 Cir., 1927, 20 F.2d 17; Maclachlan, Law of Merchant Shipping 228-229 (6th ed. 1923). In such a situation the unencumbered vessel, whether steam or sail, is under a duty to keep clear of the vessel fishing and the latter is only required to take such precautions as are seamanlike under the circumstances. The Virginia and Joan, supra; The Grovehurst, L.R. 1910 P.D. 316; see The New Moon, D.C. N.D.1932, 55 F.2d 928, 929; Marsden, Collisions at Sea 14-15 (8th ed.1923). Admittedly the International Rules, 33 U.S.C.A. § 61 et seq.,* in effect at the time of the collision did not expressly state that a steamer must keep out of the way of a steam trawler. The Rules explicitly provided that steamers should give way to sailing vessels [3] and sailing vessels should give way to fishing vessels.[4] If a sailing vessel must keep out of the way of a fishing vessel, it follows that a steamer must do so since she is more maneuverable than a sailing vessel. We are aware of no case holding that a steamer has the right of way over a vessel engaged in fishing. The First Circuit in The Virginia and Joan, 86 F.2d 259, held that while a steam trawler 55 feet long was not a "boat" within the meaning of Article 26, she was nevertheless entitled to the right of way by reason of her encumbered condition either under Article 27, 33 U.S.C.A. § 112, or Article 29, 33 U.S.C.A. § 121. We are persuaded that the term "boat" as used in Article 26 was sufficiently broad to cover all water craft. See The Grovehurst, L.R.1910 P.D. 316. Congress has now expressly provided by Article 26 that fishing vessels with nets or lines or trawls out are entitled to the right of way over all approaching vessels. 33 U.S.C.A. § 146j. This we think is but a codification of a long recognized maritime custom and practice.

2. "§ 104. Steam vessels crossing. Art. 19. When two steam vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other." 33 U.S.C.A. § 104.

* Now 33 U.S.C.A. § 143 et seq.

3. "§ 105. Steam and sailing vessels meeting. Art. 20. When a steam vessel and a sailing vessel are proceeding in such directions as to involve risk of collision, the steam vessel shall keep out of the way of the sailing vessel." 33 U.S.C.A. § 105.

4. "§ 111. Right of way of fishing vessels or boats; obstruction of fairway. Art. 26. Sailing vessels under way shall keep out of the way of sailing vessels or boats fishing with nets, or lines, or trawls. This rule shall not give to any vessel or boat engaged in fishing the right of obstructing a fairway used by vessels other than fishing vessels or boats." 33 U.S.C.A. § 111.

Since the Crescent was fishing with her trawl out she was the privileged vessel and it was the duty of the Diana Claire to keep out of the way. Had appellant maintained a lookout he would have observed that the Crescent was encumbered and could have avoided her with little difficulty.

■ The short answer to the third claimed fault on the part of the Crescent is that failure to display a basket or other efficient signal in violation of Article 9(k) of the International Rules [5] did not contribute to and could not have caused the collision. As above stated, appellant was not maintaining a lookout and did not see the Crescent. Hence, the display of a basket would have been of no avail. See United States v. Woodbury, 1 Cir., 1949, 175 F.2d 854, 862.

That the Crescent was fishing with a trawl out was discernible at a glance to any experienced seaman. The Virginia and Joan, 1 Cir., 1936, 86 F.2d 259; see United States v. Woodbury, 1 Cir., 1949, 175 F.2d 854. Her otter boards were down, her cables extended and she was barely moving in the water. Appellant had eight years experience as a fisherman and knew that he was navigating in fishing waters where trawlers were operating. He admitted that on other occasions he had no trouble detecting trawlers from one-half mile way. Mr. Hooper of the State of California Fish and Game Commission testified that an experienced navigator could easily ascertain that a trawler had her nets out at a distance greater than one-half mile on a clear day. These facts further fortify the conclusion that appellant maintained no lookout and that the failure of the Crescent to display a basket had no connection with the accident.

Judgment affirmed.

5. "§ 79. Lights and day signals of fishing vessels and boats. Art. 9.

\*  \*  \*  \*  \*

"(k) All vessels or boats fishing with nets or lines or trawls, when under way, shall in daytime indicate their occupation to an approaching vessel by displaying a basket or other efficient signal where it can best be seen. If vessels or boats at anchor have their gear out, they shall, on the approach of other vessels show the same signal on the side on which those vessels can pass." 33 U.S.C.A. § 79(k).