Christian F. WYLLER et al.,
Plaintiffs-Appellees,

v.

**FAIRCHILD HILLER CORPORATION,**
Defendant-Appellant.

No. 73–2480.

United States Court of Appeals,
Ninth Circuit.

Sept. 13, 1974.

Theodore M. Pease, Jr. (argued) of Burr, Pease & Kurtz, Anchorage, Alaska for defendant-appellant.

Avrum M. Gross (argued) of Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, Alaska, for plaintiffs-appellees.

Before KOELSCH and CHOY, Circuit Judges, and RENFREW,* District Judge.

OPINION

KOELSCH, Circuit Judge:

This litigation arises from a helicopter crash near Ketchikan, Alaska, in which two persons were killed, a third seriously injured, and the helicopter destroyed. The aircraft was owned by Livingston Copters, Inc. (Livingston) and piloted by Kelly Everett Hays, one of its employees. The plaintiffs are the sole sur-

* The Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

viving passenger (Wyller), the administratrix of the Hays estate, and Livingston.[1] The defendant, Fairchild Hiller Corporation (Fairchild), designed and manufactured the helicopter and a "fail-safe" mechanism with which it was equipped.

Plaintiffs brought their actions in the Superior Court for the State of Alaska. In their complaints they charged Fairchild with negligence, strict product liability and breach of implied warranty. Their common theory was that the fail-safe mechanism malfunctioned during normal flight and in circumstances which inevitably resulted in the crash of the aircraft. Fairchild removed the actions to the United States District Court for the District of Alaska, where they were consolidated and tried to a jury. At the conclusion of the trial, which extended over a period of some three weeks, the jury returned the verdicts for plaintiffs and against Fairchild as follows: (1) Wyller, $350,000; (2) Hays' administratrix, $250,000; and (3) Livingston, $35,000. The district court denied Fairchild's subsequent motion for judgment n. o. v. or, alternatively, a new trial, and entered judgment on the verdicts. Fairchild appeals. We affirm.

## I. *Sufficiency of the Evidence*

■ Fairchild's initial contention is that the evidence adduced by the plaintiffs was insufficient to support the verdicts. We disagree. Having studied the conflicting technical theories advanced by the parties and having reviewed the lengthy record of the case, we are con-

vinced that the evidence, including the testimony of Wyller and of plaintiffs' experts, the broken fail-safe unit and the unseized transmission, the absence of severe damage to at least one of the leading edges of the main rotor blades, the burnished appearance of the shear ring, and the ultimate landing point of the helicopter, is more than sufficient to support the jury's resolution of the conflict.

## II. *The "Excluded" Testimony of Dr. Roberts*

Fairchild next contends that the district court committed prejudicial error in refusing to allow the testimony of its metallurgical expert, Dr. Roberts, concerning his examination of the surface of a shear ring which had been made to fail experimentally several months before the trial. Again we disagree.

Plaintiffs had sought to discover, by means of an interrogatory, whether Fairchild had conducted any tests on fail-safe units similar to the one which had failed during the accident so as to ascertain whether such units could fail under flight conditions; Fairchild had answered that interrogatory in the negative. Thus when Fairchild first offered Dr. Roberts' testimony respecting the results of tests conducted subsequent to Fairchild's negative response, plaintiffs' counsel moved that the court exclude such testimony as a sanction for Fairchild's failure to supplement its answer in accordance with Rule 26(e), F.R.Civ. P.[2] The court did not rule immediately;

---

1. The record does not reveal whether the estate or heirs of William G. Canady, the other decedent, ever claimed or received compensation for his death.

2. Rule 26(e), F.R.Civ.P., provides:
   "(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
   "(1) A party is under a duty seasonably to supplement his response with respect

to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
   "(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are

instead it requested that Fairchild's counsel discontinue interrogation on the point until it had had an opportunity to review the matter over the weekend.

■■ On the following Monday, the trial resumed and Fairchild made no additional attempt to introduce the challenged testimony; no ruling on the plaintiffs' motion to exclude the testimony appears on the record.[3] Under these circumstances, we see no reason to disregard the general rule that, where evidence offered and objected to has been temporarily excluded, the party who sought to introduce such evidence must renew his effort in that respect at a later, appropriate stage of the trial; his failure to do so precludes him from asserting on appeal that the evidence was erroneously excluded.[4]

■ Even assuming *arguendo* that the actions of the district court may somehow be construed as a "ruling" excluding the challenged evidence and further assuming that such a "ruling" was error, Fairchild has shown no prejudice. The district court permitted Dr. Roberts to testify as to his opinions concerning the burnished appearance of the shear ring and its source; while the "excluded" evidence would presumably have supported his stated opinions, we do not think it would have substantially added to their weight.[5]

### III. *Wyller's Hypnosis Treatments*

After the close of discovery and some four years after the crash, Wyller underwent several treatments involving hypnosis for the purpose of improving his limited recollection of the events surrounding the crash. Prior to Wyller's testifying at trial, Fairchild moved to limit the former's testimony to that given at his deposition, or, alternatively, that before any matter recalled after the hypnosis treatments was received in evidence, the hypnotist be required to establish the reliability of the procedure employed. The district court denied the motion, and Wyller was permitted to testify as to his recollection both prior and subsequent to the treatments. Thereafter, the hypnotist, a professional psychologist experienced in both aviation psychology and "hypnotic age regression" technique, fully elucidated the procedures employed.

■ We cannot accept Fairchild's argument that Wyller's testimony was rendered inherently untrustworthy by his having undergone hypnosis. Wyller testified from his present recollection, refreshed by the treatments. His credibility and the weight to be given such testimony were for the jury to determine. Fairchild was entitled to, and did, challenge the reliability of both the remembered facts and the hypnosis procedure itself by extensive and thorough cross-

---

such that a failure to amend the response is in substance a knowing concealment.

"(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses."

3. Fairchild's counsel has supplemented the record on appeal in an effort to sustain his stated belief that a ruling granting the motion to exclude was made in chambers outside the presence of a court reporter. The supplementary materials, however, are vague and conflicting, and they are simply insufficient to uphold the conclusion that such a ruling was made.

4. *See, e. g.*, Bridgeport Type Engineering Co. v. DeMatteo Construction Co., 159 Conn.

242, 268 A.2d 391, 395 (1970); Kasten Construction Co. v. State Roads Comm., 238 Md. 38, 207 A.2d 505, 506 (1965); State v. Kendrick, 383 S.W.2d 740, 746 (Mo.1964); Marstaller v. Albina Dock Co., 191 Or. 145, 229 P.2d 269, 275 (1951); *cf.* Torres v. Alaska, 519 P.2d 788, 794–795 (Alas.1974); *see generally* Annotation, Necessity and Sufficiency of Renewal of Objection to, or Offer of, Evidence Admitted or Excluded Conditionally, 88 A.L.R.2d 12, 124–140 (1963).

5. We note that Fairchild argued in the district court that it had not violated Rule 26(e) in failing to supplement its response because the evidence involved was not a matter of "substantial importance."

examination of Wyller and the hypnotist. Under the circumstances, we perceive no abuse of discretion by the district court. *See* Harding v. State, 5 Md.App. 230, 246 A.2d 302, 311–312 (1968), cert. denied 395 U.S. 949, 89 S. Ct. 2030, 23 L.Ed.2d 468 (1969); State v. Jorgensen, 8 Or.App. 1, 492 P.2d 312, 315–316 (Or.App.1971).

■ Nor will we consider Fairchild's argument that the district court erred in admitting testimony from Wyller and the hypnotist concerning the contents of tape recordings made while Wyller was in a hypnotic state. The assignment is not properly raised on appeal, for the record indicates that, in each instance where such evidence was received, Fairchild failed to object to its admission.[6]

Fairchild also contends that the district court erred in permitting the hypnotist's testimony as to the reliability of the statements made by Wyller while the latter was under hypnosis. Once again, the assignment is not properly before us due to Fairchild's failure to object at trial.[7]

■ Fairchild also contends that the district court erred in failing to give a cautionary instruction to the jury regarding Wyller's testimony insofar as it consisted of information recalled by means of hypnosis. Fairchild had attached a proposed instruction on the subject to its pretrial memorandum, in compliance with a district court order that proposed instructions on unique issues be submitted prior to trial. However, when the parties were called upon to submit their respective sets of proposed instructions near the close of trial, Fairchild submitted no such cautionary instruction. After the court had assembled the set of proposed instructions it intended to give—a set which included no cautionary instructions on hypnosis—respective counsel were given an opportunity to review the proposed set and make objections. Fairchild made no objection to, nor mention of, the court's failure to include the cautionary instruction. While we believe that such an instruction would have been appropriate under the circumstances, *see* *Harding, supra*, at 312, 246 A.2d 302, the assignment is barred by Rule 51, F. R.Civ.P.[8] *See* Monsma v. Central Mutual Insurance Co., 392 F.2d 49, 52 (9th Cir. 1968); Bertrand v. Southern Pacific Co., 282 F.2d 569, 572 (9th Cir. 1960). We give little weight to Fairchild's assertion that it had insufficient time to review the proposed instructions prior to making objection; it never made that complaint known to the trial court.

---

6. Even assuming *arguendo* that the assignment were properly before us, the tapes themselves were never offered into evidence, and each reference to an out-of-court statement was offered not to prove the truth of the statement but for a valid and independent purpose; had an objection been timely made, and the court called upon to exercise its discretion, the admission of the statements would have been permissible. *See, e. g.*, People v. Hiser, 267 Cal.App.2d 47, 72 Cal.Rptr. 906, 915–916 (1968); State v. Chase, 206 Kan. 352, 480 P.2d 62, 66–67 (1971); State v. Harris, 241 Or. 224, 405 P.2d 492, 499 (1965); Lemmon v. Denver & Rio Grande Western R. Co., 9 Utah 2d 195, 341 P.2d 215, 218 (1959).

7. Had an objection been made, it might well have been sustained for the questioned testimony bears a similarity to that concerning the results of polygraph tests, *see* Pulakis v. State, 476 P.2d 474, 479 (Alas.1970); People v. Harper, 111 Ill.App.2d 204, 250 N.E. 2d 5, 7 (1969). However, in view of Fairchild's extensive cross-examination challenging the hypnotist's opinion and basis thereof and the fact that Wyller's relevant testimony of the events surrounding the crash was entirely from his present recollection, we cannot say that the district court's failure to exclude the testimony was an error affecting the substantial rights of the parties, F.R. Civ.P. 61, or creating a high likelihood of a miscarriage of justice, Holiday Inns of America, Inc. v. Peck, 520 P.2d 87, 91–92 (Alas.1974).

8. Rule 51, F.R.Civ.P., provides in pertinent part:
"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

IV. *The Court's Refusal to Admit Evidence of the Loan Receipt Agreement between Wyller and Livingston*

In August, 1970, Wyller and Livingston entered into an agreement whereby Wyller released Livingston from any claims he might have against it arising from the crash and Livingston "loaned" Wyller almost $75,000 for attorneys' fees and costs in Wyller's anticipated action against Fairchild. The "loan" was to be repaid, with six per cent interest, only to the extent that Wyller recovered from Fairchild, and it was agreed that Wyller would not settle his claim against Fairchild without Livingston's consent.

The instant agreement bears a marked similarity to the "loan receipt" device by which indemnity and liability insurers sometimes settle losses by advancing to the insured the amount of his loss in the form of a loan, repayable only in the event and to the extent that the insured obtains a recovery for the loss from a third party. Such agreements insulate the insurer from the necessity of seeking to recoup its loss in its own name and from the judicially recognized prejudice of juries against insurance companies; they also enable injured plaintiffs to avoid the acceptance of unjust settlements out of necessity. *See generally* Annotation, Insurance: Validity and Effect of Loan Receipt or Agreement between Insured and Insurer for a Loan Repayable to the Extent of Insured's Recovery from Another, 13 A.L.R.3d 42 (1967).

Fairchild argues that the district court should have permitted it to cross-examine both Wyller and Livingston's president concerning the terms of the agreement in order to impeach the testimony of each by showing bias. We are not persuaded. The district court was within its discretion in concluding under the circumstances that the policy of encouraging extrajudicial settlements and the recognized danger of misleading the jury inherent in the admission of such evidence, *see* Luth v. Rogers & Babler Construction Co., 507 P.2d 761, 768 (Alas.1973), outweighs its probative value as impeachment. *Cf.* Hutchings v. State, 518 P.2d 767, 770 n. 8 (Alas. 1974). Both Wyller and Livingston, as parties plaintiff, had an obvious financial interest in the imposition of liability on defendant Fairchild; evidence that Livingston may have had a partial interest in Wyller's recovery is of little probative value where its financial interest in the specific outcome desired by both was already apparent to the jury. *Cf.* Breitkreutz v. Baker, 514 P.2d 17, 28–29, 29 n. 30 (Alas.1973).

V. *Real Party in Interest*

Fairchild asserted in the trial court and argues in its briefs on appeal that the funds which Livingston "loaned"[9] to Wyller were actually provided by Livingston's insurer. The insurer, however, was neither a signatory to, nor mentioned in, the agreement, and there was no assignment of Wyller's cause of action to either Livingston or the insurer. Prior to trial, Fairchild moved to add the insurer as an additional party plaintiff or, in the alternative, for permission to amend the pleading to indicate that Wyller and Livingston were suing for the use and benefit of Livingston's insurer; it argued that the agreement did not evidence a true loan, but rather a payment which subrogated Livingston's insurer to the position of Wyller, thus making the insurer a real party in interest under F.R.Civ.P. 17(a).[10] The district court, relying on

---

9. We express no opinion as to whether, for purposes of the Uniform Contribution Among Tortfeasors Act (Alas.Stats. § 09.-16.040) the "loan" funds, or any portion of them, may constitute a payment, or consideration, for the release, rather than a true loan, thus reducing the amount of Wyller's claim against Fairchild. *See* Layne v. United States, 460 F.2d 409, 410–411 (9th Cir. 1972).

10. Rule 17(a), F.R.Civ.P., provides in pertinent part:
    "Every action shall be prosecuted in the name of the real party in interest."

**512**

Waterway Terminals Co. v. P. S. Lord Mechanical Contractors, 242 Or. 1, 406 P.2d 556 (1965), ruled that the agreement evidenced a true loan and denied the motion to add the insurer as a party plaintiff.[11] It also denied the motion to amend the pleadings, ruling that the sole purpose in Fairchild's seeking such amendment was to prejudice the minds of the jurors with knowledge that plaintiffs were insured.

■ We express no opinion on the propriety of the district court's reasons for denial of the motions, for our review of the record reveals that there is insufficient evidence of the insurance company's involvement in the "loan" transaction to warrant a finding that it is a real party in interest under any theory. The agreement itself merely indicates a transaction between Wyller and Livingston, and Fairchild's affidavit in support of the motion merely indicates that the "loan" funds did not come from Livingston; the actual source of the funds is not disclosed.[12] Absent some substantial showing that this particular insurer was in fact involved in the transaction, the district court would have exceeded its discretion in requiring the insurer's joinder as a real party in interest.

Fairchild's remaining contentions have no merit and are not of sufficient substance to warrant discussion.

Affirmed.

11. "Historically the courts of the Territory of Alaska considered the opinions of the Supreme Court of Oregon as being highly persuasive. There has been no indication to date that the Supreme Court of the State of Alaska will deviate from or abandon this practice." Alaska Airlines Inc. v. Northwest Airlines, Inc., 228 F.Supp. 322, 326 (D. Alas.1964), aff'd 351 F.2d 253 (9th Cir. 1965).

12. The affidavit of Fairchild's counsel merely states:
"3. To the best of my information and belief, Mr. Arlo Livingston [Livingston's president] testified that Livingston Copters, Inc. is insured with Underwriters of Lloyd's of London with single limit of $1,000,000. To the best of my knowledge and belief, he also testified that the payment which Mr. Wyller received pursuant to the loan-receipt agreement was not made by Livingston Copters, Inc."
Fairchild's memorandum in support of the motion states:
"It is evident from the deposition of Arlo Livingston which was taken on May 19, 1972, that the payment to Wyller made pursuant to the agreement, was made by Livingston Copter's insurer."
However, that deposition is not before us as Fairchild never made it a part of the record on appeal.