Roberta KLINE, as Administratrix of the Estate of Karen Kline, Deceased, Appellant,

v.

FORD MOTOR CO., INC., Appellee.

Jacqueline SELBY, Appellant,

v.

FORD MOTOR CO., INC., Appellee.

Nos. 74–1317, 74–1397.

United States Court of Appeals, Ninth Circuit.

Sept. 22, 1975.

Rehearing Denied Nov. 5, 1975.

Charles D. Sneathern, of Magna & Cathcart, Los Angeles, Cal. (argued), for appellants.

Peter Abrahams (argued), of Dryden, Harrington & Swartz, Los Angeles, Cal., for appellee.

## OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and FITZGERALD,* District Judge.

PER CURIAM.

Karen Kline ("Karen") and Jacqueline Selby ("Jacqueline") brought these consolidated personal injury actions against Ford Motor Company ("Ford") claiming that design deficiencies in the accelerator linkage system and the steering wheel lock mechanism in the Ford Pinto that Karen was driving and in which Jacqueline was riding caused Karen to lose control of the car resulting in the single-car crash that injured both of them. While the case was pending on appeal, Karen died from her injuries and her mother as administratrix of her estate has been substituted in her place as appellant. This diversity case was tried to a jury on the sole theory of strict liability in tort. At the close of plaintiffs' case in chief, the district court granted Ford's motion to dismiss pursuant to Rule 50(a) of the Federal Rules of Civil Procedure on the ground that plaintiffs had failed to prove any causal connection between the crash and the claimed design defects. The issues on appeal are: (1) Was the evidence connecting the design defects to the accident sufficient to require submission of the liability issue to the jury? (2) Did the district court err in refusing to permit Jacqueline to testify about the events immediately before the accident on the ground that she was incompetent to testify to those events because her memory of them had vanished before her recollection was restored under hypnosis? (3) Did the district court err in refusing to permit one of plaintiffs' expert witnesses to express his opinion about a

---

* Honorable James M. Fitzgerald, District of Alaska, sitting by designation.

causal connection between the defects and the accident?

The accident happened in the very early morning of October 31, 1970. Karen was driving the Pinto which had been purchased new about 30 days before the accident. At the time of the accident, the odometer registered 2653 miles. Karen, then 18 and Jacqueline, then 21, were driving home on the Pomona Freeway. A truck driver, Paul Cave, saw the Pinto pass him going about 50 to 60 miles per hour. When the Pinto was approximately 150 feet in front of him in the number 2 lane, the car turned and went straight for the side of the embankment. The vehicle went over the embankment and crashed into a fence about 65 feet from the roadway. Smith, a highway patrol officer, reached the scene within minutes of the accident. There were no skid marks noted.

Evidence was introduced, which if credited by the jury, would have supported findings that, at the time of the accident, the accelerator linkage system was capable of sticking in a depressed, open-throttle condition and that the steering wheel locking mechanism was capable of being activated and placed in a locked position independently of the position of the 4-speed manual transmission after the ignition had been turned off. The plaintiffs' problem was how to connect these deficiencies with the accident. The theory was that while Karen was driving along the freeway, the accelerator-carburetor control system failed to return from the depressed position and the vehicle continued to accelerate. Karen tried to turn off the engine and, in the process, her knee accidentally activated the steering column locking assembly, thereby locking the wheels.

Karen could not testify. She sustained severe head injuries and was in a coma from which she never revived before her death. Jacqueline suffered retrograde amnesia from her injuries. When her deposition was taken before the first trial, she could remember nothing about the accident or the events shortly before the accident. In the interim after her deposition and before trial, she had undergone hypnosis at the University of California at Los Angeles Medical Center under the supervision of a psychologist, Dr. Leonard Ollinger. She testified that the session of hypnosis revived her memory and she testified to these events: The Pinto after entering the freeway was going upgrade requiring acceleration. Karen suddenly started screaming that the car would not slow down. Jacqueline noticed a sudden increase in speed as the car reached the crest of the hill and started on the downgrade near the Greenwood Avenue Overpass, just before the accident. Karen tried to turn off the key, and the car went off the side of the road.

The court granted a mistrial, set a date for a hearing to determine the admissibility of Jacqueline's testimony, and set a new trial date. At the hearing, the court received the testimony of Dr. Ollinger about the procedure and conduct of the hypnosis session, listened to tape recordings of the session, and heard argument. The court excluded Jacqueline's testimony to the events recalled after hypnosis, sustaining Ford's objections, on the ground she was not competent as a witness to testify to facts recalled under hypnosis. The ruling was erroneous.

 Competence refers to the condition of the witness at the time he or she is called to testify. Jacqueline was fully capable of expressing herself and understanding her duty as a witness to tell the truth. (E. g., Cal.Evid.Code §§ 405, 701 and annexed Comment (West 1966); B. Witkin California Evidence (2d ed. 1966) § 768, at 716.) She was present and personally saw and heard the occurrences at the time of the accident. She was testifying about her present recollection of events that she had witnessed. That her present memory depends upon refreshment claimed to have been induced under hypnosis goes to the credibility of her testimony not to her competence as a witness. Although the device by which recollection was refreshed is unusual, in legal effect her situation is not different

**1070**

from that of a witness who claims that his recollection of an event that he could not earlier remember was revived when he thereafter read a particular document. (*Wyller v. Fairchild Hiller Corp.* (9th Cir. 1974) 503 F.2d 506; Cal.Evid. Code § 771 (West 1966); B. Witkin, *supra,* § 1167, at 1080–81.) Here, as in *Wyller,* "[w]e cannot accept [defendant's] argument that [plaintiff's] testimony was rendered inherently untrustworthy by [her] having undergone hypnosis. [Plaintiff] testified from [her] present recollection, refreshed by the treatments. [Her] credibility and the weight to be given such testimony were for the jury to determine." (503 F.2d at 509.)

 We turn to the claimed error in sustaining objections to Professor Manning's stating his opinion about whether the accelerator stuck and the wheels locked at the time of the accident. His opinion was admissible. We agree with Professor Wigmore that the appropriate criterion for receiving opinion evidence from a qualified witness is: "[C]an a jury from *this person* receive appreciable help?" (7 J. Wigmore, *Evidence* (3d ed. 1940) § 1923.) But, as plaintiffs recognize, the district court has discretion in determining how much help the particular opinion of this kind will be to the jury. (*People v. Cole* (1956) 47 Cal.2d 99, 301 P.2d 854.) If the court decides that the help will be borderline or ineffective, it can decline to admit the opinion. Although we, as trial judges, may have been more charitable in our assessment of the value of this expert opinion than was the trial court under the circumstances of this case, we cannot say that the district court abused its discretion in refusing to admit it.

 The case must be reversed for error in excluding Jacqueline's testimony. With that testimony, the plaintiffs had enough evidence on liability to require submission to the jury. Accordingly, we need not decide whether the evidence was sufficient to go to the jury despite the exclusion of Jacqueline's testimony.

Reversed and remanded.