UNITED STATES of America, Appellee,

v.

George L. AWKARD, Appellant.

UNITED STATES of America, Appellee,

v.

John Wright WILLIAMS, Appellant.

UNITED STATES of America, Appellee,

v.

Clarence HINNANT, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Paul Milton LANEY, Appellant.

UNITED STATES of America, Appellee,

v.

Richard Lafayette THOMPSON, Appellant.

Nos. 77–2577, 77–2579, 77–2538, 77–2578 and 77–2623.

United States Court of Appeals, Ninth Circuit.

April 23, 1979.

Howard W. Gillingham, Los Angeles, Cal., Alvin S. Michaelson, Beverly Hills, Cal., for appellants Williams and Awkard.

Curtis B. Rappe, Asst. U. S. Atty., Los Angeles, Cal., for the U. S.

Morton H. Boren, Los Angeles, Cal., Michael D. Sobel, Beverly Hills, Cal., for appellants Hinnant and Laney.

Elliott L. Aheroni, Beverly Hills, Cal., for appellant Thompson.

Before GOODWIN and TANG, Circuit Judges, and EAST *, District Judge.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

GOODWIN, Circuit Judge:

Five defendants, convicted of a prison murder, appeal. They assert, among other assignments, that the court erred in permitting a government witness to testify about events recalled only after hypnosis, and in permitting the medical expert who hypnotized the witness to testify in a manner prejudicial to the defendants.

The government witness, Hackney, was one of several inmates who had stabbed Lewis, a fellow prisoner, in the prison's group activities center. After being granted immunity, Hackney began to recall the names of other prisoners he said were in on the stabbing. Aided by hypnosis, Hackney remembered still others who he claimed participated in the crime.

At trial, the government called Dr. William Kroger, the expert who had hypnotized and interrogated Hackney. Kroger was qualified as an internationally respected authority on medical hypnosis, and he explained the techniques used in hypnosis. The prosecution then had the doctor express his opinions about the reliability of hypnotic stimulation in enhancing the memory of past events, and about whether Hackney in particular had had his memory accurately refreshed. At the government's request, this expert testimony was brought in "out of order", before Hackney testified, and hence before Hackney's credibility had been called into question.

Defendants object, first, to the use of hypnosis to refresh Hackney's recollection. This objection is without merit. The use of hypnotically adduced evidence has gained acceptance in many jurisdictions.[1] Pretrial hypnosis of witnesses is permitted in this circuit in both criminal and civil cases. The fact of hypnosis, if disclosed to the jury, may affect the credibility of evi-

dence, but not its admissibility. _United States v. Adams_, 581 F.2d 193, 198–99 (9th Cir. 1978); _Kline v. Ford Motor Co._, 523 F.2d 1067, 1069–70 (9th Cir. 1975). There was no error in admitting Hackney's hypnotically refreshed recollections.

More troublesome is the testimony of the prosecution's hypnosis expert, Dr. Kroger. Defendants object that the court erred in refusing to exercise discretion regarding that testimony, and that the testimony improperly buttressed Hackney's credibility.

In jurisdictions in which the admissibility of hypnotically refreshed evidence is still an open question, a foundation concerning the reliability of hypnosis is no doubt necessary. _See, e. g., Harding v. State_, 5 Md.App. 230, 246 A.2d 302 (1968), _cert. denied_, 395 U.S. 949, 89 S.Ct. 2030, 23 L.Ed.2d 468 (1969). But admissibility of such evidence has not been an issue in the federal courts of this circuit since _Wyller v. Fairchild Hiller Corp._, 503 F.2d 506, 509–10 (9th Cir. 1974). Because there is no issue about the admission of hypnotically refreshed evidence, there is no need for a foundation concerning the nature and effects of hypnosis.[2]

It was therefore unnecessary for Kroger to testify in advance of Hackney about the technique of hypnosis. The government urges, nevertheless, that there was no error in allowing Kroger to take the stand. The government asserts that the use of expert testimony is within the discretion of the trial court. This general proposition is correct. "The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony. The balancing of the probative value of the tendered expert testimony evidence against its prejudi-

---

1. _See_ Note, _Refreshing the Memory of a Witness Through Hypnosis_, 5 U.C.L.A.—Ala.L. Rev. 266 (1976).

2. We have suggested procedures to be followed during hypnosis to ensure that posthypnosis statements are truly the subject's own recollections. _United States v. Adams_, 581 F.2d at 198–99 and n.12. Objections to the subject

testimony on the ground that such procedures were not followed should be heard by the district judge before trial, or out of the presence of the jury on voir dire of the witness. If the trial court overrules the objection and permits the subject to testify, the adverse party may, if it wishes, expose the details of the hypnosis to the jury.

cial effect is committed to the 'broad discretion' of the trial judge * * *." *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973) (citations omitted); *see* Fed.R. Evid. 702. Generally, the order of proof at trial is also a matter of discretion for the trial judge. *United States v. Peterson*, 549 F.2d 654, 657 (9th Cir. 1977).

■ In this instance, however, the district judge did not exercise discretion. In the face of the defendants' objection that there was no need for Kroger to testify on the use or reliability of hypnosis, the court let the testimony come in without weighing the possibility of prejudice in having a nationally recognized expert testify as an oath-helper in support of Hackney. The trial judge read our decisions in *Kline v. Ford Motor Co., supra,* and *Wyller v. Fairchild Hiller Corp., supra,* as *requiring* the expert testimony to establish admissibility. As discussed above, this is not the rule.[3] The district court's failure to exercise its discretion in admitting the expert testimony about hypnosis was therefore erroneous.

Moreover, several important considerations limit the discretion of the trial judge when the expert testimony concerns only the ability of a witness to recall details of past experience. In analogous areas, the Federal Rules of Evidence carefully restrict the bolstering of a witness's testimony when the credibility of that witness has not been attacked. For example, prior consistent statements by a witness may not be introduced until an adverse party has charged the witness with recent fabrication or improper influence or motive. *See* Fed. R.Evid. 801(d)(1), and Advisory Committee note (C) thereto. Evidence of truthful character may be introduced only in the forms of opinion or reputation evidence, and only when the character of the witness for truthfulness has been attacked. *See* Fed.R.Evid. 608(a).

■ Similar considerations must govern the exercise of the trial judge's discretion here. Unless an adverse party attacks the witness's ability to recall by bringing out or exploring the fact of hypnosis, the use of expert testimony to support the efficacy of hypnosis is improper. The party calling a witness should not be permitted to inquire in any way into the witness's ability to recall, or methods of pretrial memory refreshment, until such questions have been raised by the adversary.

In this case, before the introduction of Kroger's testimony, defense counsel indicated that they preferred not to cross-examine Hackney about his hypnosis, given its current acceptance in the courts and Kroger's credentials. If defendants strategically chose not to challenge the use of hypnosis, there was no purpose consistent with the Federal Rules in having the jury hear his testimony. Therefore, it was error to allow Kroger to take the stand at the time, and to testify in the manner described.

■ Even had the defense challenged Hackney on cross-examination because of his hypnosis, portions of Kroger's testimony would have been inadmissible. In addition to testifying that he had hypnotized Hackney, and that hypnosis generally helps subjects to remember past events, the doctor stated his opinion that Hackney's memory had been accurately refreshed by hypnosis. While Kroger's testimony on the general nature and usual effects of hypnosis would have been proper had Hackney been challenged, Kroger's opinion of its effects on Hackney would still have been inadmissible, under Fed.R.Evid. 608(a). That rule strictly limits opinion evidence on witness credibility to "character for truthfulness or untruthfulness"; Hackney's ability to recall the stabbing, while relevant to credibility, had nothing to do with his character. Thus,

---

**3.** In *Wyller,* the hypnotist did testify, but only after the fact of hypnosis had been attacked on cross-examination. As explained below, this is crucially different from the situation here. In *Kline,* the hypnotist testified, not before the jury, but in a hearing before the court. The court refused to admit the hypnotically recalled evidence because a sufficient foundation on the validity of hypnosis had not been laid. We reversed, noting that the fact of hypnosis did not affect admissibility. Any insufficiency of the expert's foundation was irrelevant to the propriety of the witness's testimony.

even if hypnosis of the witness had been raised as a ground for discrediting his testimony, Kroger should have been permitted to testify only about the general nature and usual effects of hypnosis, and the details of his hypnosis of Hackney.

■ "Credibility \* \* \* is for the jury—the jury is the lie detector in the courtroom." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). In *Barnard,* a case decided before the effective date of the Federal Rules, we upheld the district judge's exclusion of expert psychiatric testimony that a defendant-witness was a sociopath who would lie if it was to his advantage to do so. We held that such evidence should be received only in unusual cases. Expert medical evidence on the effect of hypnosis on a particular witness's ability to recall is inadmissible for the same reasons as those invoked in *Barnard.* Under the Federal Rules, opinion testimony on credibility is limited to character; all other opinions on credibility are for the jurors themselves to form.

■ Therefore, it was error to bring in the expert in this case, and to have him give an opinion on Hackney's ability to recall the stabbing. It was also error to have Hackney testify on direct examination that he had been hypnotized. But these errors are reversible only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict against any of the five defendants. *United States v. Valle-Valdez,* 554 F.2d 911, 914–16 (9th Cir. 1977).[4]

Defendant Hinnant was the one most affected by Hackney's posthypnosis testimony. Before hypnosis, Hackney had placed defendants Awkard, Williams, and Laney at the scene of the crime. Only after hypnosis, however, did Hackney recall Hinnant at the scene. (Hackney did not place Thompson at the scene at all.) The jury heard that it was hypnosis that enabled the witness to remember Hinnant's involvement in the stabbing. It also heard that both be-fore and after hypnosis, Hackney remembered seeing Awkard, Williams, and Laney at the stabbing.

But Hackney's inculpation of Hinnant was only cumulative to more damaging testimony against Hinnant offered by another inmate, Alex. Hackney, aided by hypnosis and testifying under immunity, only recalled Hinnant leaning up against the wall of the group activities center while Lewis was stabbed. Alex, who also witnessed the murder, testified without either hypnosis or immunity that Hinnant participated in the stabbing by holding the struggling victim while another defendant stabbed him. Unlike Hackney, Alex also stated that Hinnant was holding a knife. And a fellow inmate testified that five months after the murder of Lewis, in a conversation about that crime, Hinnant said, "the nigger knew I was there".

Even without Hackney's testimony, there was also ample evidence to support the finding of guilt against the other four defendants. Alex testified that Laney, Thompson, and Awkard were at the scene of the murder. Another inmate testified that he saw Laney, wearing bloodstained clothes and with a knife in his hands, immediately after the stabbing. This witness also testified that Laney admitted holding the victim while Awkard stabbed him. A third witness testified that Thompson had asked him for a knife shortly before the stabbing; a fourth, that Thompson later threatened "to take care of Pato [an inmate] like we did that dude in GAC [the group activities center], and I'll take care of him in GAC style."

Witnesses other than Hackney testified that Awkard was seen with Williams and Laney before and after the stabbing, and seen leaving the area of the murder with blood on him; that Awkard later admitted before other inmates that he had stabbed Lewis; that Awkard had said before the murder that "he was going to make an example" of the victim; and that Awkard actively recruited participants. Alex testified that Williams was stabbing the strug-

---

4. Defendants do not argue that the error here was of constitutional dimension.

672

gling victim while Hinnant held him. These and other items of evidence make it more probable than not that the jury would have convicted these five men even if the trial court had allowed the defense to keep Kroger off the stand, and prevent Hackney from mentioning hypnosis. The error in admitting this testimony was not prejudicial.

Defendants have briefed and argued other assignments of error. Our study of the record and transcript convinces us that there was no reversible error in the proceedings below.

Affirmed.