379 So.2d 372 (1979)
Fred CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. NN-312.
District Court of Appeal of Florida, First District.
December 27, 1979.
Rehearing Denied February 21, 1980.
*373 James L. Harrison, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and Charles A. Stampelos, Asst. Atty. Gen., for appellee.
McCORD, Judge.
Appellant was convicted of grand theft of a motor vehicle, the property of Charles Wayne Smith; armed robbery of Smith; and attempted first-degree murder with a firearm. He was acquitted of armed robbery of Robert Starling at Buy-Low Carpets, Inc., and armed robbery of Judith Littlefield at Buy-Low Carpets, Inc. He appeals the convictions. We affirm.
Evidence was presented that two men robbed Robert Starling and Judith Littlefield at Buy-Low Carpets, Inc.; that upon leaving the Buy-Low Carpets store, they commandeered a truck owned by Charles Wayne Smith for their getaway and shortly thereafter robbed Smith and attempted his murder. Smith testified that following a visit to his doctor at Gateway Shopping Center, he was entering his truck when two black males suddenly appeared at the truck armed with pistols; that they forced him to enter the truck where he sat between them while one drove and the other held a gun pointed at him; that he believed he would be killed, and when the truck stopped at a traffic light, he reached across one of the men and threw the door open, shoving the man with the pistol to the ground; that he fell with the person, and when he arose, he was shot.
The evidence shows that Smith on several occasions prior to September 13, 1978, was shown groups of photographs of individuals suspected by the police to have been involved in the offenses. None of these sets of photographs contained the picture of appellant, though one or more of the sets contained a photograph of appellant's co-defendant Prince, who was tried separately. Smith was unable to select Prince's photograph as one of the perpetrators of the crime.
The state presented the testimony of Lt. Brian R. Mickler of the Jacksonville Sheriff's Office, who testified that he placed Smith in a hypnotic state on September 13, 1978, during which Smith was instructed to recall the episode. After coming out of the hypnotic state, Smith selected both Clark's and Prince's photographs from a group of photographs shown to him and identified them as the two men who had perpetrated the crimes upon him. Smith also testified to the hypnosis and his identification thereafter of the photographs of appellant and Prince as the two perpetrators of the crime. *374 He further identified appellant in the courtroom as the man who shot him.
Appellant contends that the court erred in admitting the testimony of the hypnotist, Lt. Mickler on the following grounds:
"1. Testimony regarding experiments conducted using hypnosis are not acceptable as evidence because the reliability of such evidence has not been sufficiently established.
2. Mickler was not sufficiently qualified to testify regarding the hypnotic trance nor the procedures he had followed in hypnotizing Smith.
3. Mickler's testimony had no probative value and only served to improperly bolster the testimony of Charles Smith creating a substantial prejudice to Clark."
As to appellant's first ground, he likens hypnosis to the admissibility of the results of polygraph tests, which Florida courts have repeatedly held have not been shown to be reliable for admission in evidence. Kaminski v. State, 63 So.2d 339 (Fla. 1952); Codie v. State, 313 So.2d 754 (Fla. 1975); Sullivan v. State, 303 So.2d 632 (Fla. 1974); Dean v. State, 325 So.2d 14 (Fla. 1 DCA 1975). As to evidence obtained from hypnosis, appellant cites two opinions of our sister court of the Third District: Rodriquez v. State, 327 So.2d 903 (Fla. 3 DCA 1976), and Shockey v. State, 338 So.2d 33 (Fla. 3 DCA 1976). These two cases did not deal with the situation presented here, however, but involved the admissibility of statements made by a person while under hypnosis  the Third District Court of Appeal ruling such statements to be inadmissible. Here, the trial court, before allowing the hypnotist's testimony, heard it on proffer and determined that it did not include any statements relating to the crime made by the victim while under hypnosis and that no post-hypnotic suggestions were made to him while he was under hypnosis. The hypnotist testified that he (the hypnotist) had no knowledge of the facts of this case prior to placing Smith under hypnosis; that he did not know who the suspects were and had no idea whether they were white males, black males, or were males or females. He testified that all he did was "relax Mr. Smith to the extent that outside stimuli coming in was reduced and he could solely concentrate and spend all his energy thinking of a particular incident that happened." Along this same line, he testified further as follows:
"The purpose of placing Mr. Smith was to try to clear his mind and eliminate any distractions and see if we could get any cloud of stress away from him so that he could totally and fully concentrate on what happened and recall through the process of hypernesia."
Defining hypernesia, he testified:
"That is total relaxation and removing all outside stimuli, even any distractions that your body might cause, kind of trance like state so that your sole concentration is on one particular thing."
He stated that no one spoke to Smith while he was under hypnosis other than himself and that he did not at any time suggest to Smith who the perpetrators of the crime were. He testified that upon Smith coming out of the hypnotic state, he was present when the photographic display was presented to Smith and saw him pick out two individuals in that photographic display; that Smith was fully out of the hypnotic state when he made the selection. Smith testified to his identification of the two photographs after he came out of hypnosis, and he also identified appellant in the courtroom as the individual who shot him.
Testimony given by a witness after hypnosis, which he could not remember prior to hypnosis, was held admissible by the United States Court of Appeals, Ninth Circuit, in Kline v. Ford Motor Co., Inc., 523 F.2d 1067 (9th Cir.1975). There the court said:
"Competence refers to the condition of the witness at the time he or she is called to testify. Jacqueline was fully capable of expressing herself and understanding her duty as a witness to tell the truth. (E.g., Cal.Evid.Code §§ 405, 701 and annexed Comment (West 1966); B. Witkin California Evidence (2d ed. 1966) § 768, at 716.) She was present and personally saw and heard the occurrences at the time of the accident. She was testifying *375 about her present recollection of events that she had witnessed. That her present memory depends upon refreshment claimed to have been induced under hypnosis goes to the credibility of her testimony not to her competence as a witness. Although the device by which recollection was refreshed is unusual, in legal effect her situation is not different from that of a witness who claims that his recollection of an event that he could not earlier remember was revived when he thereafter read a particular document. (Wyller v. Fairchild Hiller Corp. (9th Cir.1974) 503 F.2d 506; Cal.Evid.Code § 771 (West 1966); B. Witkin, supra, § 1167, at 1080-81). Here, as in Wyller, `[w]e cannot accept [defendant's] argument that [plaintiff's] testimony was rendered inherently untrustworthy by [her] having undergone hypnosis. [Plaintiff] testified from [her] present recollection, refreshed by the treatments. [Her] credibility and the weight to be given such testimony were for the jury to determine.' (503 F.2d at 509.)"
The Court of Appeals of Oregon ruled to the same effect in State v. Jorgensen, 8 Or. App. 1, 492 P.2d 312 (Ore.Ct.App. 1971). Also, the Court of Special Appeals of Maryland, in Harding v. State, 5 Md. App. 230, 246 A.2d 302 (1968), so ruled stating:
"The admissibility of Mildred Coley's testimony concerning the assault with intent to rape case causes no difficulty. On the witness stand she recited the facts and stated that she was doing so from her own recollection. The fact that she had told different stories or had achieved her present knowledge after being hypnotized concerns the question of the weight of the evidence which the trier of facts, in this case the jury, must decide. Borman v. State, 1 Md. App. 276, 229 A.2d 440, Carroll v. State, 3 Md. App. 50, 237 A.2d 535, Thompson v. State, 4 Md. App. 31, 240 A.2d 780."
Likewise, the Supreme Court of North Carolina, in State v. McQueen, 295 N.C. 96, 244 S.E.2d 414 (1978), ruled as follows:
"We turn next to the defendant's contention that it was error to admit the testimony of Barbara Kiser for the reason that it was the result of her hypnosis prior to trial. In this contention, we find no merit. The circumstance that this witness was hypnotized prior to trial would bear upon the credibility of her testimony concerning the occurrences at the Norris house at the time the two women were killed, but would not render her testimony incompetent. As above shown, the jury was fully advised that the witness had been so hypnotized. Her credibility, as a result of this circumstance, and of other matters bearing thereon, was for the jury... ."
We agree with the foregoing authorities. Smith's identification was made not while in a hypnotic state, but from his present recollection refreshed by his having been put under hypnosis. The credibility thereof was for the jury to determine.
As to appellant's second ground that Lt. Mickler was not sufficiently qualified to testify regarding the hypnotic trance nor the procedures he had followed in hypnotizing Smith, the record shows that he had undergone special training and had considerable experience in hypnotism and the use of hypnotism in criminal investigations. The trial judge heard a proffer of his testimony before it was presented to the jury and determined that his qualifications were sufficient for the testimony he gave. Whether or not he was shown to be sufficiently qualified was a matter for the trial judge's determination in the exercise of his discretion. Gates and Sons, Inc. v. Brock, 199 So.2d 291 (Fla. 1 DCA 1967). We find no abuse of discretion.
As to appellant's third ground that Mickler's testimony had no probative value and only served to improperly bolster the testimony of Smith creating a substantial prejudice to appellant, we find no error. Smith's identification of appellant and his co-defendant Prince coming only after he had been placed under hypnosis, it was entirely proper that the jury be given the details of the hypnosis in order that they *376 might evaluate the credibility of Smith's identification of appellant. The state was entitled to have the jury weigh all of the circumstances relating to the hypnosis in determining the credibility they would attach to the post-hypnotic identification.
We have considered the additional point raised by appellant and find it to be without merit.
AFFIRMED.
LARRY G. SMITH and SHIVERS, JJ., concur.